**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

LORRAINE GARRETT-GREER                                        **PLAINTIFF**

V.                                                    **CIVIL ACTION NO. 1:08-CV-229-SA-DAS**

**KEY STAFF SOURCE, INC. and
FIBER DIRECT, INC.**                                         **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment [53]. For the reasons stated below, the motion is granted.

## I. BACKGROUND

Defendant Key Staff Source, Inc. (Key Staff) is a temporary staffing agency. Two different companies - Fiber Direct, Inc. (Fiber Direct) and Polymer Group, Inc. (PGI) - conducted packaging operations at a plant in Guntown, Mississippi. Each of these companies used temporary employees from Key Staff in a variety of job functions. Plaintiff was one of those temporary employees.

On May 21, 2004, Plaintiff filled out an application with Key Staff which included information regarding her job skills and preferences. Based on her application information, Key Staff assigned her to the Guntown facility on June 15, 2004. She was laid off by Fiber Direct on August 19, 2004. Plaintiff was again assigned by Key Staff to the Guntown facility on January 11, 2005. She was laid off by Fiber Direct on April 15, 2005.

On July 22, 2005, Plaintiff returned to the Guntown facility for another cycle of work. During this third work period, Plaintiff initially received $8.00 an hour. During the same time period, other employees who were not African-American received higher rates of pay, and Plaintiff alleges that they performed the same tasks as she did.

Plaintiff's third employment period ended on March 23, 2006. She contends that she was laid off against her will, while Defendant suggests that she volunteered to be laid off. Plaintiff applied for unemployment benefits, but the Mississippi Department of Employment Security initially denied her request. At a hearing before the Board of Review, Key Staff management testified that Fiber Direct indicated that Plaintiff voluntarily left her employment. As no representative from Fiber Direct appeared to testify, the Board of Review approved Plaintiff's request for unemployment benefits.

Plaintiff initiated the present action on September 15, 2008, naming both Key Staff and Fiber Direct as defendants. She alleges violations of 42 U.S.C. § 1981 and the Equal Pay Act, in addition to state law claims for breach of contract and wrongful termination. In its Order and Memorandum Opinion of April 20, 2009, the Court dismissed the breach of contract claim.

Key Staff filed its Motion for Summary Judgment on January 12, 2010, seeking summary judgment as to Plaintiff's Section 1981, Equal Pay Act, and wrongful termination claims. Fiber Direct filed a Suggestion of Bankruptcy on February 3, 2010, and the Court dismissed it from this matter without prejudice.

## II. DISCUSSION

### A.    *Summary Judgment Standard*

"Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT&T Corp., 314 Fed. Appx. 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows that there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

**B.      *Section 1981***

Plaintiff argues that Key Staff violated 42 U.S.C. § 1981 by discriminating against her on the basis of race. She alleges that Key Staff entered into an agreement with Fiber Direct to pay African-American employees less wages than they paid similarly qualified white employees who were performing the same work. Plaintiff also contends that she was laid off because of her race, and that Key Staff communicated false information to the Mississippi Department of Employment Security which delayed her receipt of unemployment benefits.

Courts typically analyze Section 1981 claims for racial discrimination according to the McDonnell Douglas burden-shifting framework applied to Title VII actions.  Brooks v. Lubbock County Hosp. Dist., 2010 U.S. App. LEXIS 7488, *4 (5th Cir. Apr. 12, 2010); Bright v. GB Bioscience Inc., 305 Fed. Appx. 197, 201 n. 3 (5th Cir. 2008); Decorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007).  However, Key Staff's primary argument is that it did not make the employment decisions of which Plaintiff complains.  Therefore, Key Staff contends that it is not liable for those employment decisions, even if the facts alleged by Plaintiff give rise to a cognizable Section 1981 claim.  Accordingly, the facts of the case and the arguments presented by the present motion do not require the Court to engage in the burden-shifting analysis typically employed in cases concerning employment discrimination.  Rather, the primary question is whether, according to the undisputed facts in the record, Key Staff may be liable for the adverse employment actions alleged by Plaintiff.

Section 1981 can only be violated by purposeful discrimination.  Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982); see also Stewart v. City of Houston Police Dept., 2010 U.S. App. LEXIS 6562, *3 (5th Cir. Mar. 30, 2010) ("A cause of action for racial discrimination under Section 1981 requires a demonstration of intentional discrimination."); Brown v. City of Shreveport, 95 Fed. Appx. 699, 700 (5th Cir. 2004) (summary judgment affirmed where plaintiff provided no evidence of purposeful discrimination); Felton v. Polles, 315 F.3d 470, 483 (5th Cir. 2002) (to maintain a Section 1981 cause of action, a plaintiff must show an intent to discriminate) (quoting Green v. State Bar of Tex., 27 F.3d 1083, 1086 (5th Cir. 1994)); Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr., 876 F.2d 1231, 1237 (5th Cir. 1989) (each defendant must be found to have intentionally discriminated against plaintiff).  After careful review of the record, the Court finds no evidence that Key Staff purposefully

discriminated against Defendant. Rather, all the evidence in the record indicates that Key Staff was not the decision-maker with regard to the amount of Plaintiff's wages, the length of Plaintiff's employment, or the circumstances surrounding Plaintiff's termination.

Amanda Phillips, a Branch Manager and Account Manager for Key Staff, testified by affidavit that Fiber Direct and PGI supervised the work of temporary employees assigned by Key Staff to the Guntown facility. Further, Phillips asserted that Fiber Direct and PGI paid Key Staff for the services of temporary employees such as Plaintiff, and Key Staff then paid the temporary employees. According to Phillips, Fiber Direct and PGI determined the rate of pay received by all temporary employees and decided when temporary employees received any increase in their rate of pay. Finally, Phillips testified that Fiber Direct and PGI determined the length of any work assignment.

Phillips also testified that Fiber Direct, through its employees Lewis Clayton and Jack Melson, made all decisions regarding the rate of pay for temporary employees. Indeed, Plaintiff unequivocally stated in her responses to Defendant's Interrogatories that Clayton and Melson - managers at Fiber Direct - were the decision-makers with regard to the amount of wages received by those employed at the Guntown facility. Further, Plaintiff's testimony, Phillips' testimony, and the decision of the Mississippi Department of Employment Security Review Board all confirm that Key Staff had no knowledge of the circumstances surrounding the termination of Plaintiff's final work period at the Guntown Facility beyond what was communicated to it by Fiber Direct. In addition to Phillips' testimony, Key Staff also presented testimony from Jack Melson, an employee of Fiber Direct. Melson stated that Key Staff did not make any decisions regarding the wages received by Plaintiff or the tasks she performed on a daily basis.

5

Finally, in her Amended Complaint, Plaintiff alleged that "Fiber Direct management provided false information to Key Staff management which prevented the plaintiff from receiving unemployment benefits on April 3, 2006." In contrast, Plaintiff now argues that Key Staff intentionally discriminated against her by providing false information to the Mississippi Department of Employment Security. However, Key Staff has presented testimony that it merely communicated to the Department of Employment Security what Fiber Direct - the party who made the decision to lay off Plaintiff - communicated to it. The Department of Employment Security eventually approved Plaintiff's unemployment benefits on the basis that Fiber Direct - the only party other than Plaintiff with personal knowledge of the circumstances surrounding the end of her employment - did not appear at the review hearing.

Plaintiff does not dispute the above-cited evidence. Rather, Plaintiff argues that Key Staff may be held liable for Fiber Direct's actions. Plaintiff offers three alternative arguments: 1) that Key Staff was her employer, rather than Fiber Direct; 2) that Key Staff was a joint employer with Fiber Direct; or 3) that Key Staff was Fiber Direct's agent. The first two arguments are inapposite, insofar as Section 1981 is not limited to actions against employers. Rivers v. Roadway Express, 511 U.S. 298, 304, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994) (Section 1981 is not limited to employment). The third argument gets closer to the crux of the issue: whether Key Staff enjoyed control over the employment actions of which Plaintiff complains.

In General Building Contractors Association, Incorporated v. Pennsylvania, representatives of a class of racial minorities who were skilled laborers alleged that a union discriminated on the basis of race in the operation of a hiring hall which established contracts between union members and industry employers. 458 U.S. at 378, 102 S. Ct. 3141. The plaintiffs also alleged that the union

6

discriminated on the basis of race in the operation of an apprenticeship program established by the union and several trade associations.  Id., 102 S. Ct. 3141.  The United States Supreme Court addressed two issues: whether liability under Section 1981 required proof of discriminatory intent; and whether, absent such proof, liability could nevertheless be imposed vicariously on the trade associations and employers for the union's intentional discrimination. Id., 102 S. Ct. 3141.

After examining the legislative history of Section 1981, the Court concluded that it can only be violated "by purposeful discrimination."   Id. at 391, 102 S. Ct. 3141.  Addressing the second issue, the Court observed that "[e]ven if the doctrine of *respondeat superior* were broadly applicable to suits based on § 1981, therefore, it would not support the imposition of liability on a defendant based on the acts of a party with whom it had no agency or employment relationship."  Id. at 392, 102 S. Ct. 3141.  The Court further noted: "At the core of agency is a 'fiduciary relation' arising from the  'consent by one person to another that the other shall act on his behalf and subject to his control.'  Equally central to the master-servant relation is the master's control over or right to control the physical activities of the servant."  Id. at 393, 102 S. Ct. 3141 (internal citation omitted).  The Court examined the facts in the record and found that there was no evidence that the employers or trade associations enjoyed the right to control the activities of the union. Id. at 395, 102 S. Ct. 3141. Accordingly, the Court concluded: "On the assumption that *respondeat superior* applies to suits based on § 1981, there is no basis for holding either the employers or the associations liable under that doctrine without evidence that an agency relationship existed at the time the [union] committed the acts on which its own liabiltiy was premised."  Id., 102 S. Ct. 3141.

The Fifth Circuit Court of Appeals has confronted similar issues.  In Arguello v. Conoco, Incorporated, a group of Hispanic and African-American consumers sued Conoco, Inc. for the

discriminatory actions of several Conoco stores employees.  207 F.3d 803, 805 (5th Cir. 2000).

However, some of the plaintiffs complained of discrimination by employees of Conoco-branded

stores - stores which were independently owned and had entered into a marketing agreement which

allowed them to sell Conoco gasoline and products.  Id. at 807.  The issue before the Court was

whether an agency relationship existed between Conoco, Inc. and the Conoco-branded stores.  Id.

The Court observed that "in order to impose liability on a defendant under § 1981 for the

discriminatory actions of a third party, the plaintiff must demonstrate that there is an agency

relationship between the defendant and the third party."  Id. (citing  Gen. Building Contractors

Ass'n, 458 U.S. at 393, 102 S. Ct. 3141).  The Court further observed that "to establish an agency

relationship between Conoco, Inc., and the branded stores the plaintiffs must show that Conoco, Inc.

has given consent for the branded stores to act on its behalf and that the branded stores are subject

to the control of Conoco, Inc."  Id.  The Court analyzed the marketing agreement entered into by

Conoco, Inc. and the stores, concluding that it did "not establish that Conoco, Inc. ha[d] any

participation in the daily operations of the branded stores nor that Conoco, Inc. participates in

making personnel decisions."  Id. at 808.  Accordingly, the Court concluded that there was no

agency relationship and Conoco, Inc. could not be held liable for the actions of the employees of the

Conoco-branded stores.  Id.

The undisputed facts cited above show that Key Staff enjoyed no control over the amount

that Plaintiff was paid, the length of her work assignment, or the circumstances under which her

employment ended.[1]  Therefore, no agency relationship existed between Key Staff and Fiber Direct

---

[1]In a supplemental response to Defendant's interrogatories, Plaintiff asserted that a
manager at Key Staff knew the race of each person hired, sent each person to work at Fiber
Direct, told each person what they would be earning at Fiber Direct, and observed the temporary

with respect to those issues, and Key Staff can not be held liable for Fiber Direct's actions relating thereto.  Accordingly, the Court grants Key Staff's Motion for Summary Judgment as to Plaintiff's Section 1981 causes of action.

### C.    *Equal Pay Act*

Plaintiff alleges that Key Staff violated the Equal Pay Act by paying her less than it did male employees performing the same work.  To establish a prima facie case for disparate pay under the Equal Pay Act, a plaintiff must show 1) her employer is subject to the act; 2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and 3) she was paid less than employees of the opposite sex providing the basis of comparison.  Wiley v. Am. Elec. Power Serv. Corp., 287 Fed. Appx. 335, 340-41 (5th Cir. 2008).

The only evidence in the record of a male performing the same work as Plaintiff is her supplemental declaration that Duong Hung worked on the assembly line beside her.  However, at Plaintiff's deposition, she stated that all the women were doing the same job as her, while the men operated a tow motor in addition to other duties.  Indeed, Plaintiff recounted a specific time that Hung operated a tow motor.  "Affidavits submitted in opposition to a motion for summary judgment may supplement deposition testimony, but cannot contradict prior testimony without explanation."  Bouvier v. Northrup Grumman Ship Sys., 350 Fed. Appx. 917, 920 (5th Cir. 2009) (citing S.W.S.

---

employees working at Fiber Direct.  Plaintiff also points to accounting records from Key Staff which include the same code number for each employee's job description.  Therefore, Plaintiff argues that she has presented evidence that Key Staff knew or should have known that white employees were earning more than black employees for the same work.  However, as discussed above, control is the key issue when determining Section 1981 liability within the context of an agency relationship.  Gen. Building Contractors Ass'n, 458 U.S. at 395, 102 S. Ct. 3141; Arguello, 207 F.3d at 808.

Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996)).  Therefore, to the extent that Plaintiff's supplemental declaration contradicts her deposition testimony that Hung operated a tow motor, the Court excludes it from consideration.

In addition to Plaintiff's own testimony that Hung operated a tow motor, Defendant offered testimony from Jack Melson, an employee of Fiber Direct, that Hung performed tasks throughout his employment which the Plaintiff did not perform, including the operation of a tow motor. Therefore, Plaintiff has not provided any evidence that a male worked in a position requiring equal skill, effort, and responsibility as hers, and she has not established a prima facie case under Section 206.  Accordingly, the Court grants Defendant's Motion for Summary Judgment as to that claim.

**D.**    ***Wrongful Termination***

For the same reasons stated in the Court's discussion of Plaintiff's breach of contract claim in its April 20, 2009, Memorandum Opinion [28], the Court holds that Plaintiff's wrongful termination claim is barred by the applicable statute of limitations.  See also Avery, Shanks & Waltman, Inc. v. Giordano-Kirby Ins. Agency, Inc., 404 So. 2d 1036, 1037-38 (Miss. 1981) (one-year statute of limitations applies to suits by employees for wrongful termination of employment).

### III. CONCLUSION

For the reasons cited above, the Court grants Key Staff's Motion for Summary Judgment. A separate order consistent with this opinion shall issue on this the 6th day of May, 2010.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**